McIlvaine, J.
It is claimed, by plaintiff in error, that the relation shown to have existed between'the city and Ardner was that of employer and independent contractor, from which no liability falls upon the employer on account of the manner in which the employment is prosecuted, the rule being, in such case, that the contractor is alone responsible for an injury inflicted upon third persons by reasou of his wrongful act.
We concede the general rule of law to be that an independent contractor is alone responsible for an injury inflicted by him upon third persons, and that his employer is not within the principle upon which the doctrine of respondeat superior rests. Yet, it is equally certain, that the employer is also liable for the wrongful act of the contractor under circumstances which show that he, as clearly as the contractor, was the author and promoter of the injury. Eor instance, where the prosecution of the work as authorized by him necessarily produces the injury, he, as well as his contractor, is responsible for the damage. McCafferty v. The Railroad Co., 61 N. Y. 178. And again, when the contractor prosecutes his work in the manner authorized by the employer in the express terms of the contract, the employer must be regarded as having assented to, and as procuring the unlawful act to be done, and is, therefore, liable as a joint wrong-doer. Carman v. S. & S. Railroad Co., 4 Ohio St. 399. Within the principle of the case last cited, the liability of the city for the wrongful act of Ardner, although he be considered as an independent contractor, must be affirmed; for it clearly appears, that the work of quarrying stone on the city’s premises, by blasting, was clearly assented to and authorized.
But we are of opinion that the true relation between the city, as proprietor of the stone quarry, and Ardner, was that of master and servant, instead of employer and inde *643 pendent contractor within the principle of the rule above stated. There.was no “job” or defined quantity of work contracted for. The services of Ardner were subject to be determined at the pleasure of either party. The compen-. sation was to be measured by the quantity of labor performed. It appears to us to have been an ordinary contract for work and labor, which creates, between the employer ánd employed, the relation of master and servant, within the meaning of the law in regard to that subject. It is' true that the service, namely, the quarrying of stone in the employer’s quarry, was to be done by the use of powqler and tools furnished by the employe; but this condition in the contract, did not affect the legal relation between the parties. It was significant only as a matter affecting the rate of compensation. And it is also true, that the city ■“ had no other or further control over Ardner in said work.” Whether this language means that the city exercised no other or further control, or that the city contracted with Ardner that it would not exercise any other or further control over the work, makes no difference. If it were a mere failure to exercise control, it was the fault of the city. If it was part of the contract with the servant, that no other or further control should be exercised by the city, it is enough to say that a master can not exonerate himself from responsibility to third persons, which the daw imposes upon him, for injury resulting from the misconduct of his servant, by contracting with the servant that he will not exercise any control over him, and will not, therefore, be-responsible for any injury that he may wrongfully inflict.
It only remains, therefore, to be considered whether the city of Tiffin, if the injury complained of had been inflicted upon the defendant in error, by its own act, would be liable for the damages. That a municipal corporation, as the proprietor of lands, would be responsible for an injury resulting from the use of its own property to an adjacent proprietor, to the same extent as if it were a natural person, is not questioned.
*644 As between tbe owners of adjacent lands, the maxim of the common law, Sic utere tuo ut alienum non Icedas, applies with special force; not because it forbids the exercise of the right of dominion or control of property, according to the pleasure of the owner, in one case more than in another, whether it be real or personal property, or whether it be owned for special or general uses, but because the right to use or control it, according to the pleasure of the owner, is limited under some circumstances more than under others. Undoubtedly, the right to use property as the owner may please, provided that reasonable care is taken not to do unnecessary injury to others, is the ordinary rule. But this rule can not be interposed to justify the committing of a trespass Or the maintaining of a nuisance. A man who digs a pit on his own land, whereby the soil of an adjoining proprietor is disturbed on account of the loss of lateral support, can not justify his act on the ground that ho used reasonable care to prevent the injury. Neither can one in possession of a parcel of land operate and manage a mine or quarry upon it in such manner as to injure or destroy the property of an adjoining proprietor, justify himself by showing that he used ordinary care in the use of his own property. In such eases, the right to use is subject to the limitation that its use will not injure his neighbor. The true doctrine upon this point is well stated in the case of Hay v. The Cohoes Co., 2 Comstock (N. Y.), 159, as follows: “ The use of land by the proprietor is not therefore an absolute right, but qualified and limited by the higher right of others to the lawful possession of their property. To this possession the law prohibits all direct injury, without regard to its extent or the motives of the aggressor. A man may prosecute such business as he chooses upon his premises, but he can not erect a nuisance to the annoyance of the adjoining proprietor, even for the purpose of lawful trade. 9 Coke, 58. He may excavate a canal, but he can not cast the dirt stones upon the land of his neighbor, either by hum an agency or the force of gunpowder. If he can *645 not construct the work without the adoption of such means, he must abandon that mode of using his property or be held responsible for all damages resulting therefrom. He will not be permitted to accomplish a legal object in an unlawful manner.” And in Tremain v. The Cohoes Co., Ib. 168, it was held, that, in such case, evidence to show that the work was done in the most careful manner is inadmissible where there is no claim made for exemplary damages.

Judgment affirmed.